JOHN W. BEIER v. ABERDEEN HOTEL COMPANY and Another.[1]

June 14, 1912.

Nos. 17,664—(130).

**Negligence of master — contributory negligence of servant.**

In this a personal injury action against two defendants, based on independent and different acts of negligence of each, *held*, that one of these defendants was entitled to a directed verdict because, upon one of the two theories on which the cause of action was submitted against such defendant, plaintiff's contributory negligence and assumption of risk conclusively appears, and upon the other there was no negligence of such defendant.

[1] Reported in 136 N. W. 757.

**Same — questions for jury.**

> As to the other defendant, its negligence and plaintiff's contributory negligence are not, upon the record, so clearly questions of law that under the authority of Cruikshank v. St. Paul Fire & Marine Ins. Co. 75 Minn. 266, this court should order judgment absolute for such defendant.

**Refusal to direct verdict in favor of one defendant.**

> But *held*, upon the facts in this case, that the refusal of the court to direct a verdict in favor of the defendant entitled thereto was prejudicial error to the other defendant, because the issues became thereby unnecessarily complex, and the instructions of the court consequently tended to confuse the jury.

Action in the district court for Ramsey county to recover $21,250 for personal injuries. The separate answers of defendants alleged contributory negligence on the part of plaintiff. The replies were general denials. The case was tried before Olin B. Lewis, J., who at the close of the testimony denied defendants' separate motions for directed verdicts in their favor, and a jury which returned a verdict for $1,500 against the Aberdeen Hotel Company and $4,500 against the Northwestern Telephone Exchange Company. From orders denying separate motions of defendants for judgment notwithstanding the verdict or for a new trial, they appealed separately. Reversed and judgment ordered in favor of Northwestern Telephone Exchange Company. Reversed and new trial granted as to Aberdeen Hotel Company.

*Edmund A. Prendergast,* for appellant telephone company.

*Price Wickersham,* for appellant hotel company.

*Wondra & Helm* and *J. W. Pinch,* for respondent.

HOLT, J.

Plaintiff sued the defendants, claiming damages because of injuries suffered through their negligence. A verdict was rendered against both defendants. Each appeals from an order denying its separate motion that judgment be rendered in its favor notwithstanding the verdict, or, in case of a denial thereof, that a new trial be had.

The material facts appear to be these:

The defendant Hotel Company, a corporation, operates a hotel called the Aberdeen in the city of St. Paul. It is more than eight stories high. A passenger elevator, the door of which opens to the north, is located near the northerly wall of the building. The stairway leading from one floor to another is set against the south and east sides of the elevator shaft. The cage is about eight feet square, and is run on two guideposts set in the center of the east and west sides of the shaft. The shaft is protected by ornamental iron lattice or scrollwork sufficiently open so that the elevator may be seen as it passes up and down, and also so that the guideposts and whatever may be fastened to them may be observed. This scrollwork does not go clear from floor to ceiling, but by stepping up about six steps from the bottom of the stairway a person is in a position where he may place his head over the scrollwork and look into the shaft.

The defendant Telephone Company, a corporation, was employed to install two telephones in the hotel, and for that purpose, on the morning of November 4, 1910, sent one Boland, a foreman, and plaintiff, a helper, to do the work. Attached to the west guidepost in the shaft was a box some eight feet from the sixth floor, where were contained main wires with which the telephones to be installed had to be connected. This was to be done by one of the men standing on the top of the elevator cage, then passing the wires from the box inside the shaft along the guidepost through screw eyes inserted therein.

When plaintiff and Boland at about 9:30 a. m. got off from the elevator at the sixth floor with their wires and tools, and Boland had inspected the box on the guidepost, he called the elevator and directed the operator to lower it, so that the top thereof would be even with the sixth floor. This was done, and plaintiff was about to step in on the top of the cage to string the wires, when a guest of the hotel approached, saying, "Going down." Boland then directed the operator to come up for the guest. In the meantime two ladies on the seventh floor signaled for the elevator, and instead of taking the first party down the elevator went up to the seventh floor for these ladies. One of these was feeble, and it took a little time for them to get in. Boland and plaintiff took no notice of the move-

ments of the car, but plaintiff claims that he supposed it went down. Boland, however, started up the stairway some seven or more steps for the purpose, as he claims, of showing plaintiff the location of a screw eye on the west guidepost about a foot below the sixth floor through which he was to string the wires.

Plaintiff contends that this occurred: As the guest of the hotel approached the elevator, saying, "Going down," Boland said, "Let him take him (referring to the guest) down first," and called the operator up, and, as the guest stepped in the elevator, Boland said to plaintiff, "Come around: I want to show you something," and to the elevator operator, "Look out; we would be working there," and the operator responded, "All right." That thereupon Boland started up the stairway, followed by plaintiff, and when Boland got up some nine steps, standing three or four steps higher than plaintiff, he directed the latter to put his head over the scrollwork and notice the screw eye on the post. That plaintiff obeyed, and as he did so the elevator came down and he was caught, receiving severe injuries to his head.

Boland admits he told the elevator operator to take the guest down, and that he went up the stairway to show plaintiff the screw eye, but denies that he directed plaintiff to put his head in the shaft, or knew that plaintiff so intended, or in fact did, till he heard the outcry.

Plaintiff predicates his right to recover against the Hotel Company on the proposition that the elevator operator was requested to look out for the men when he came back, as plaintiff and Boland were to work about the shaft; that he promised so to do, but negligently, in view of what occurred, brought the car up to the seventh floor, and then ran it down without warning. And as to the Telephone Company, the claim is that Boland was a vice principal, and negligently directed plaintiff to place his head in a place of danger without taking precautions to ascertain where the elevator then was.

Each defendant made a separate motion for judgment notwithstanding the verdict, and, in case of a denial thereof, that the verdict

be set aside and a new trial awarded. The motions were denied in all things, and each defendant appeals.

Both defendants insist that contributory negligence conclusively appears, and also that plaintiff assumed the risk. We are not prepared to say as a matter of law that plaintiff was guilty of contributory negligence, or assumed the risk of injury, if he understood from what occurred that the elevator started down with the guest, that the operator was informed and understood that plaintiff and Boland were to work in such a position that it was unsafe unless the operator looked out for them in running the elevator past the sixth floor, and if ordinary care on plaintiff's part did not charge him with knowledge that the elevator went up and not down. But this is true only upon the assumption that the conversation took place between Boland and the elevator operator as contended by plaintiff.

As we read the record and the instructions of the trial court to the jury, we are of the opinion that the defendant Telephone Company was and is entitled to judgment in its favor. We may assume for the purposes of this decision that if Boland directed plaintiff to put his head in the elevator shaft it was the direction of the Telephone Company, and if there was negligence in giving such direction it was the master's negligence. The trial court so charged the jury. The court at the request of the Telephone Company instructed the jury that: "If you find, however, that a promise was made on the part of an employee of the Aberdeen Hotel Company to warn Boland and Beier of the return of the elevator, then and in that case you are instructed that Boland was equally entitled to rely upon that warning, and no recovery can be had against the defendant the Northwestern Telephone Exchange Company for any injury resulting from failure to give such warning."

We are of the opinion that this is a correct view of the law upon the facts, and no more favorable to the defendant Telephone Company than it had a right to demand. Plaintiff observed the elevator and its movements as well as Boland. He saw and heard everything that occurred, just the same as Boland did; hence, if plaintiff might rely on the conversation had with the elevator operator, so might Boland. Under this instruction the jury must have found that

118 M.—16.

plaintiff's version of the conversation between Boland and the elevator boy was not true, because, if true, a verdict should have been rendered in its favor. So that it must be held that the verdict against the Telephone Company must be based on a finding that there was no information given to the elevator operator as to the possible danger of these men, or any promise or statement by him to look out for them.

But, taking that view of the case, we are at once met with the fact that plaintiff's contributory negligence and assumption of risk appear beyond question. He knew that the elevator was being operated, and must have appreciated that there was risk connected with an attempt to stick his head into the shaft without first looking to see where the elevator was, and without having any assurance that the one running it was looking out for him or knew of his situation. All the testimony shows that plaintiff and Boland were together all the time from the moment they entered the hotel till the accident took place. What the one knew concerning the elevator, its movements and situation, the other knew also.

Under this situation it is impossible to escape the conclusion that, if it was negligence to give the order to look into the shaft, it was contributory negligence to obey. The risk involved in putting the head into the shaft was as obvious to plaintiff as to Boland, and plaintiff must have been aware of that fact. There was no occasion for haste, no attempt then made to accomplish anything, except to observe the situation. On the assumption that the conversation between Boland and the elevator operator claimed by plaintiff did not take place, the case of Larson v. Haglin, 103 Minn. 257, 114 N. W. 958, does not support plaintiff's right to recover, nor does the one of Lohman v. Swift & Co. 105 Minn. 148, 117 N. W. 418.

The contention is made by the defendant Hotel Company that it should have judgment absolute, because the action is based upon the breach of an express promise to warn, and not upon negligence. We think this is too narrow construction of the pleading. The allegation is that the defendant Hotel Company carelessly and negligently dropped the car down upon the plaintiff. Whether dropping the elevator down was a careless act depended on what had occurred

previously to the knowledge of the operator, and, in view thereof, what care the ordinarily prudent person would take to avoid probable injury to plaintiff.

The Hotel Company also urges judgment in its favor because there is no evidence showing negligence on its part or any cause of action against it. Since our conclusion is that there must be a new trial as to the Hotel Company, it is inexpedient to comment on the testimony, further than to state that we are of opinion that it does not so clearly appear that plaintiff may not be able to prove the alleged negligence against the Hotel Company that this court ought to order judgment. Cruikshank v. St. Paul Fire & Marine Ins. Co. 75 Minn. 266, 77 N. W. 958; Rihmann v. George J. Grant Construction Co. 114 Minn. 484, 131 N. W. 478.

The jury rendered a joint verdict against defendants. Our conclusion is that as to the defendant Telephone Company it has no support..

Plaintiff insists that the charge of the court, being too favorable to the Telephone Company, cannot be said to prejudice the Hotel Company, especially since, notwithstanding such charge, a verdict was rendered against the Telephone Company. If the verdict was proper against the last-named defendant, this might be true. But, as above stated, we have reached the conclusion that a verdict should have been directed for the Telephone Company. Instead of that being done, the issues relating to its negligence were submitted with those relating to the negligence of the Hotel Company, rendering it necessary to give many complicated instructions to the jury. Many requests to charge, preferred by each defendant, were also given. That this resulted in confusing the jury is evident from their attempt to return separate verdicts in unequal amounts against defendants, notwithstanding the charge that a joint verdict was proper in case there was a finding against both defendants.

The defendant Hotel Company was entitled to go to the jury, as the case stood at the close of the testimony, upon the simple issues made between it and plaintiff alone. The acts of negligence alleged against the defendants were neither joint acts, nor the same in kind, and the Hotel Company could hardly escape being prejudiced by

the confusion arising in the minds of the jury from submitting unnecessary and complicated issues and the law pertaining thereto.

To illustrate: The jury was instructed, as above set out, that if plaintiff had a right to act on the notice given the elevator operator to look out for them, so had Boland. The inference is strong that, if the jury followed that instruction, the verdict against the Telephone Company must be based upon some other ground than the conversation contended for by plaintiff as having occurred between Boland and the elevator operator. If that conversation did not take place, there is absolutely nothing upon which to base a verdict against the Hotel Company. We are therefore of the opinion that the learned trial court erred in denying a new trial to the defendant Hotel Company.

It is not necessary to consider the many assignments of error urged by appellants, because the questions presented are not such as are likely to come up in a future trial of the case.

The order denying the motion of the defendant the Northwestern Telephone Exchange Company for judgment is reversed, and judgment ordered in favor of last-named defendant notwithstanding the verdict. The order denying the motion of the defendant the Aberdeen Hotel Company for a new trial is reversed, and a new trial granted as to said defendant.